UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUSAN PETERSON,                                    Case No. 1:12-cv-616

       Plaintiff                                    Spiegel, J.
                                                    Bowman, M.J.

       vs


CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

       Defendant

## REPORT AND RECOMMENDATION

Plaintiff Susan Peterson filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. See 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and remanded because it is not supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed an application for Disability Insurance Benefits ("DIB") in December 2006, alleging a disablity on set date of December 23, 2005 due to physcial and mental impairments. After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in August 2010, at which Plaintiff was represented by counsel. At the hearing, ALJ Gregory Kenyon heard testimony from Plaintiff and an impartial vocational expert. On September 23, 2010, the ALJ denied Plaintiff's application in a written decision,

concluding that Plaintiff was not disabled.

The record reflects that Plaintiff was 44 years old at the time of her alleged disability onset date and a high school graduate. She has past relevant work as an airframe and power plant mechanic. (Tr. 17).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "lumbosacral degenerative disk disease, migrain headaches, depression and anxiety." (Tr. 12). The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work, described as follows:

> She can occasionally crawl, crouch, kneel, stoop, balance, and climb ramps and stairs; never climb ladders, ropes, or scaffolds or work around hazards such as unprotected heights or dangerous machinery; frequently reach with her non-dominant upper extremity; perform unskilled, simple, repetitive tasks; have occasional contact with co-workers and supervisors; have no contact with the public; have no occupational exposure to drugs or alcohol; have no commercial driving or rapid production pace work; and is limited to performing jobs requiring little, if any, adaption to changes in the workplace.

(Tr. 14). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while Plaintiff is unable to perform her past relevant work, other jobs existed in significant numbers in the national economy that Plaintiff could perform. Such jobs include, cleaner/housekeeper, small parts assembler, inspector and packing line worker. (Tr. 18). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

2

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by: (1)  failing to appropriately weigh the medical evidence; and (2) improperly evaluating Plaintiff's credibility.  Upon close inspection, the undersigned finds that Plaintiff's assignments of error should be sustained and this matter should be remanded for further proceedings.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v.*

*Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits

4

must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  The ALJ's Decision is not Supported by Substantial Evidence

*1.  Relevant Evidence and Decision of the ALJ*

Plaintiff served in the military from 1979 to 1986, working as an aircraft mechanic. Following an honorable discharge, she was employed as an aviation and jet instructor for G.E. Aircraft.  She sustained a worked related back injury in 2002 and was involved in a motor vehicle accident in 2005 which re-injured her back causing chronic back, leg and neck pain.  Plaintiff's statement of errors, however, focuses primarily on the ALJ's evaluation of her mental impairments.  In this regard, the record reflects:

Plaintiff, an Air Force veteran, began receiving mental health treatment from psychologist and a psychiatrist at the VA Medical Center since the age of 40.  She was prescribed antidepressants and anxiolytic medications.  (Tr. 524).

An emergency room note indicates that Plaintiff began experiencing anxiety attacks in August 2003. (Tr. 367).  At the time she was seeing a psychiatrist and had been prescribed Vallum, Ambian and Lexpro for anxiety.

Thereafter, on June 26, 2007, Plaintiff was consultatively evaluated by Jayne Malpede, Ph.D. at the request of the state agency.  (Tr. 523-528).  Upon examination, Dr. Malpede noted that Plaintiff was alert and oriented and her affected vacillated between restricted and tearful.  Her mood appeared depressed.  (Tr. 526). Dr. Malpede assigned Plaintiff a Global Assessment of Functioning (GAF) score of 52, indicating moderate

symptoms. Dr. Malpede diagnosed Adjustment Disorder with anxious depressed mood, chronic type and panic disorder without Agoraphobia. (Tr. 528).

With respect to Plaintiff's work-related mental abilities Dr. Malpede found that: Plaintiff has no significant impairment relating to others, including co-workers and supervisors; she has the mental ability to understand and follow directions and has no significant problems in the area of cognitive functioning; her ability to maintain attention to perform routine tasks shows mild impairment in the areas of concentration, persistence and pace, as evidence by slightly below average performance on a test of concentration and working memory; her mental ability to withstand the stress and pressure associated with day-to-day work activity may be impaired by her depressive symptoms as they are perceived and actual pain, as well as unresolved grief issues. These symptoms may preclude work activities, however, her inability to work has significantly contributed to a sense of loss. (Tr. 527).

In July 2007, Irma Johnston, Psy.D., a state agency psychologist, reviewed Plaintiff's medical file and completed a Psychiatric Review Technique form, wherein she found that Plaintiff had a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Tr. 539). Dr. Johnston noted that Plaintiff had received mental health treatment for anxiety and depression from Thor Tangvald, M.D. (Tr. 545, referring to notes at Tr. 215-50), and considered findings from a consultative psychological examination by Dr. Malpede in June 2007. (Tr. 545, referring to examination at Tr. 521-28). Dr. Johnston gave great weight to Dr. Malpede's examination findings. (Tr. 545). Dr. Johnston considered Plaintiff's mental impairments

6

under Listings §12.04 and §12.06 based on diagnoses of an adjustment disorder with anxious and depressed mood, chronic, and panic disorder without agoraphobia. (Tr. 529, 532, 534). Dr. Johnston concluded that none of Plaintiff's impairments met or equaled the criteria of the Listings. (Tr. 529). [1]

In April 2008, Plaintiff was presented to the VA with suicidal ideation after being arrested for shoplifting flowers at Kroger. (Tr. 582). She exhibited a depressed mood, but upon treatment, denied any further suicidal thoughts.

In August 2010, Plaintiff underwent a consultative psychological examination by Kenneth J. Manges, Ph.D. (Tr. 1079-1087). Upon examination, Dr. Manges, diagnosed Plaintiff with Major Depressive Disorder, moderate to severe, recurrent without psychotic features, post tramatic stress disorder, personality disorder, NOS, back pain and migraines and assigned her a GAF score of 50. Dr. Manges concluded that Plaintiff is only able to achieve her current functioning and independent living because of the support of her children, her medication and her simple routine existence with minimal social contact other than her family and an avoidance of any responsibility to others or activities of daily living that do not vary from day to day. With respect to Plaintiff's functional limitations Dr. Manges opined:

> Plaintiff is unable to make other than marginal adjustment to any changes without becoming emotionally overwhelmed. She cannot meet the expectations of others even in routine circumstances and certainly not in a work environment. She cannot tolerate what she deems stressful (unfamiliar) situations.
>
> Her ability to understand, retain and follow simple instructions is good in a

---

[1] Another state agency psychologist, Karla Voyten, Ph.D., reviewed Plaintiff's updated medical records, noted no significant change in Plaintiff's functioning, and affirmed Dr. Johnston's conclusions.

> controlled structured and supportive testing and interview environment but not predictive of her capacity to perform these tasks in a working setting. Her ability to perform and attend to and follow through on complex tasks is fair to poor. Her ability to interact effectively with unfamiliar persons is moderately to severely impaired; and her ability to respond to day to day work pressures appears significantly impaired.

(Tr. 1087).

Thus, Dr. Manges concluded that Plaintiff does not have the capacity to perform within a job due to her inability to perform with the necessary concentration, persistence or pace expected in a work environment. *Id.*

In light of the foregoing, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of Listings 12.04 or 12.06 because Plaintiff showed no more than mild or moderate restrictions in the "B" criteria categories of activities of daily living, social functioning, concentration, persistence or pace, or episodes of deterioration. (Tr. 13-14). In so concluding, the ALJ relied on the psychiatric review technique form completed by Dr. Johnston, the state agency psychologist, in July 2007. (Tr. 13, 529-42).

In formulating Plaintiff's mental RFC (as outlined above), the ALJ assigned great weight to the findings Dr. Malpede, as "Dr. Malpede's assessment is supported by the reports of claimant's social worker which indicate that Plaintiff is not disabled due to mental impairments." (Tr. 17). The ALJ assigned "little weight" to the findings of Dr. Manges concluding that his opinion is "generally inconsistent with the medical evidence as a whole." (Tr. 16).

Based upon hypothetical questions detailing Plaintiff's impairments as outlined in the ALJ's RFC, the vocational expert testified that jobs existed in significant numbers that Plaintiff could perform. Accordinlgy, the ALJ determined that Plaintiff was not under a

disability as defined by the regulations.

### 2. Listing Equivalent Impairment

Plaintiff's first assignment of error asserts that the ALJ erred by improperly evaluating the medical evidence or record relating to Plaintiff's impairments. Specifically, contrary to the findings of Dr. Manges, Plaintiff asserts that the ALJ erroneously concluded that no treating or examining source indicated that Plaintiff has an impairment equivalent in severity to the criteria of any listed impairment...". (Tr. 13). The undersigned agrees.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

In weighing the opinion evidence, it is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir.2009) (quoting Wilson v. Commissioner, 378 F.3d 541, 544 (6th Cir. 2004). However, there are no treating source opinions in the record in this matter. Thus, the administrative law judge "must explain in the decision the weight given to the opinions of a State agency medical or psychological

consultant ..., as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other non-examining sources...."). See 20 C.F.R. §§ 404.1527(f) (2)(ii), 416.927(f)(2)(ii).

Furthermore, when a claimant claims disability from a mental impairment, an ALJ must rate the degree of functional limitation resulting from that impairment with respect to "four broad functional areas," including: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four areas are commonly referred to as the "B criteria." *See Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir.2009) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.). In order to meet the paragraph "B criteria" a claimant must be markedly limited in two of the four categories.

In this case, the ALJ rated Plaintiff's functional impairment in each of the four "B criteria" areas before concluding that Plaintiff did not meet or equal Listing 12.04 (affective disorders) and 12.06 (anxiety related disorders). The ALJ concluded that the paragraph B criteria was not met because he believed that Plaintiff was only mildly restricted in activities of daily living; moderately restricted in social functioning; and moderately limited in maintaining concentration, persistence or pace with no episodes of decompensation. (Tr. 11–12). In reaching this finding, the ALJ determined that no treating or examining physician determined that Plaintiff met or equaled any of the listings. In evaluating Plaintiff's mental impairments, the ALJ also rejected the findings of Dr. Manges, who determined that Plaintiff was markedly limited in activities of daily living and concentration persistence and pace. Such findings are not substantially supported.

As detailed above, Dr. Manges concluded that Plaintiff is only able to achieve her

current functioning and independent living because of the support of her children, her medication and her simple routine existence with minimal social contact other than her family and an avoidance of any responsibility to others or activities of daily living that do not vary from day to day. "Her every day activities of daily living speak to her inability to perform work." (Tr. 1087). Thus, Dr. Manges findings strongly suggest that Plaintiff has a marked restriction in activities of daily living.

Dr. Manges' report also indicates that Plaintiff has marked difficulties maintaining concentration, persistence or pace to perform sustained work activity. Notably, Dr. Manges opined that Plaintiff is unable to make other than marginal adjustment to any changes without becoming emotionally overwhelmed. (Tr. 1087). She cannot meet the expectations of others in a work environment; her ability to understand, retain and follow simple instructions is good in a controlled structured and supportive testing and interview environment but not predictive of her capacity to perform these tasks in a working setting. Her ability to perform and attend to and follow through on complex tasks is fair to poor. (Tr. 1087). Thus, despite the ALJ's finding to the contrary, Dr. Manges opinion (while not expressly stated) clearly indicates that he found that Plaintiff had marked restriction in her activities of daily living and marked difficulties maintaining concentration persistence and pace.

Next, the rationale given by the ALJ for the weight given to Dr. Manges' findings is not substantially supported. As noted above, the ALJ concluded that Dr. Manges' opinion is "generally inconsistent with the medical evidence as a whole". The ALJ failed to identify such inconsistent evidence and/or elaborate on this statement in any way. The ALJ's conclusory statement hinders a meaningful review of whether he properly applied the

11

regulatory factors outlined in 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)) in weighing Dr. Manges' opinion.

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D.Ohio 2011); see also *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Furthermore, as noted by Plaintiff, the findings of Dr. Manges and Dr. Malpede (whom the ALJ assigned controlling weight), do not, in fact, appear wholly inconsistent with one another.  Notably, Dr. Malpede performed a psychological examination of Plaintiff in June 2007.  Dr. Malpede assigned Plaintiff a GAF score of 52 and found that Plaintiff's ability to withstand the stress and pressure associated with day-to-day work activity may preclude sustained gainful employment. (Tr. 527).  Thus, as found by Dr. Manges, Dr. Malpede also questioned Plaintiff's ability to maintain concentration as needed to perform gainful employment.

Additionally, Dr. Malpede's opinion was rendered in June 2007, whereas Dr. Manges examined Plaintiff in August 2010. Plaintiff, however, asserts that the evidence of record shows a deterioration of her condition during that time. Notably, Plaintiff was hospitalized for suicidal ideation in April 2008, and the treatment notes from the VA Medical Center indicates that her mental health issues preclude work activity. (Tr. 685, 955). The ALJ's decision, however, fails to indicate if he considered such evidence in his evaluation of the opinion evidence. As found by the Sixth Circuit, when an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Servs.*, Case No. 86–5875, 1988 WL 34109, at * 2 (6th Cir. Apr.18, 1988) (*quoting Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981)); see also *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

In light of the foregoing, the undersigned finds that the ALJ's findings related to the paragraph "B" criteria are not substantially supported because the ALJ improperly evaluated the opinion evidence. As such, this matter must be remanded for further fact-finding in this regard.

*3. Credibility*

Plaintiff's second assignment of error asserts that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's credibility assessment failed to comply with the requirements set forth in SSR 96–7p. The undersigned agrees.

13

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the

14

individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240–41 (6th Cir.2002).  Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Here, the ALJ determined that Plaintiff's testimony and complaints of disabling pain were not fully credible in light of the object evidence, Plaintiff's reported activities and inconsistent statements throughout the record.   The ALJ also noted that the record indicated that Plaintiff has a "clear narcotic dependence."  (Tr. 16).

In light of the ALJ's failure to properly evaluate the medical evidence of record in

formulating Plaintiff's RFC, the ALJ's determination that Plaintiff's subjective complaints were not supported by the objective evidence is not substantially supported. Thus, because the ALJ must reconsider the opinion evidence of record, it is also necessary for the ALJ's credibility assessment to be reconsidered on remand. Notably, the ALJ's findings may change after the medical evidence is reevaluated on remand, making it appropriate to reconsider his credibility finding.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Id.* at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this Report and

Recommendation.  As no further matters remain pending for the Court's review, this case

be **CLOSED.**


                                                     *s/Stephanie K. Bowman*
                                                   Stephanie K. Bowman
                                                   United States Magistrate Judge


                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF OHIO
                              WESTERN DIVISION

SUSAN PETERSON,                                    Case No. 1:12-cv-616

        Plaintiff                                  Spiegel, J.
                                                   Bowman, M.J.

                                     17

vs

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).